UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>PLAINTIFF,<br><br>v.<br><br>$379,720.00 IN UNITED STATES CURRENCY; ONE IPHONE CELL PHONE, SERIAL NUMBER FK1ZJ1VEN70Q; ONE IPHONE CELL PHONE, SERIAL NUMBER FFWD90MMPLJP; AND ONE IPAD, SERIAL NUMBER DLXYK0JMK824,<br><br>DEFENDANTS. | CIVIL ACTION NO.: |

## VERIFIED COMPLAINT FOR FORFEITURE

COMES NOW Plaintiff United States of America, by Kurt R. Erskine, Acting United States Attorney, and Cynthia B. Smith, Assistant United States Attorney, for the Northern District of Georgia, and shows the Court the following in support of its Verified Complaint for Forfeiture:

1

## NATURE OF THE ACTION

1.  This is a civil forfeiture action against funds that are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

## THE DEFENDANTS IN REM

2.  The funds at issue are $379,720.00 in United States Currency ("Defendant Currency"), one iPhone cell phone, serial number FK1ZJ1VEN70Q; one iPhone cell phone, serial number FFWD90MMPLJP; and one iPad ("Defendant Electronic Devices") which were seized from Juan Manuel Gamez-Alzate during a traffic stop on Interstate 85 in Coweta County, Georgia, a place within the jurisdiction and venue of this Court.

3.  The Coweta County Sheriff's Office ("CCSO") seized the Defendant Currency and Defendant Electronic Devices on or about October 15, 2020.

4.  On or about November 3, 2020, U.S. Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") adopted the seizure of the Defendant Currency.

5.  The Defendant Currency is presently located in a secure account maintained by HSI, and the Defendant Electronic Devices are presently being securely held by HSI.

2

## JURISDICTION AND VENUE

6.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

7.    This Court has *in rem* jurisdiction over the Defendant Currency and the Defendant Electronic Devices pursuant to 28 U.S.C. § 1355(b)(1)(A) because the acts or omissions giving rise to the forfeiture occurred in this district.

8.    Venue is proper in this district pursuant to 28 U.S.C. §§ 1355, 1391 and 1395 because the acts or omissions giving rise to the forfeiture occurred in this district and the property is located in this district.

## BASIS FOR FORFEITURE

9.    Pursuant to 18 U.S.C. §841(a), except as authorized, it is unlawful for any person to knowingly or intentionally distribute or dispense a controlled substance except as authorized by that subchapter.

10.   Pursuant to 18 U.S.C. § 881(a)(6), all moneys and things of value that were furnished or intended to be furnished in exchange for a controlled substance, that constitute proceeds traceable to such an exchange, or that were used or were intended to be used to facilitate the sale or exchange of a controlled substance in violation of 21 U.S.C. § 841 are subject to seizure and forfeiture to the United States.

3

11. Pursuant to 18 U.S.C. § 981(a)(1)(C), any property which constitutes or was derived from proceeds traceable to a violation of any offense constituting a "specified unlawful activity" is subject to forfeiture to the United States.

12. 18 U.S.C. § 1956(c)(7) defines, in relevant part, a "specified unlawful activity" as any act or activity constituting an offense listed in 18 U.S.C. § 1961(1).

13. 18 U.S.C. § 1961(1) includes, as part of the list of offenses, "dealing in a controlled substance or listed chemical."

## FACTUAL BACKGROUND

14. On or about October 15, 2020, Sergeant Faulkner, a member of the Grantville Police Department/Coweta County Interdiction Task Force, was conducting traffic enforcement on Interstate 85 Southbound near mile marker 52 in Coweta County, Georgia.

15. While doing so, Sgt. Faulkner observed a dark-colored 2020 Lincoln vehicle traveling less than one car length behind another vehicle while travelling at 70-75 miles per hour.

16. Sgt. Faulkner observed that the vehicle had military insignia stickers on the rear bumper.

17. He also observed that the vehicle had a license tag frame that obstructed the name of the state in which the tag was issued.

4

18.    Sgt. Faulkner then conducted a traffic stop on the vehicle.

19.    Sgt. Faulkner learned that the driver and sole occupant of the vehicle was

Juan Manuel Gamez-Alzate.

20.    Gamez-Alzate provided his California driver's license and stated the

vehicle was a rental.

21.    Gamez-Alzate displayed nervous behavior during the encounter.

22.    Gamez-Alzate was asked about the terms of the rental agreement.

23.    Gamez-Alzate stated that he rented the vehicle for one week.

24.    Sgt. Faulkner inquired from where Gamez-Alzate was traveling.

25.    Gamez-Alzate stated that he was traveling from Boston, Massachusetts,

where he had attended his younger brother's funeral.

26.    He stated he was traveling to Dallas, Texas.

27.    He informed law enforcement that he acquired the vehicle from Hertz

Rental Cars in Massachusetts.

28.    He stated that he was in the United States Marine Corps, and was

stationed in Miramar, California.

29.    Sgt. Faulkner asked Gamez-Alzate why he would place Marine Corps

stickers and a tag frame on a vehicle he rented and did not own.

30.    Gamez-Alzate replied that he did it for his brother who was also a Marine

for four years.

5

31. In Sgt. Faulkner's experience, changing the appearance of a vehicle is a common practice in the interstate transportation of contraband items as an effort to make the vehicle appear as their own.

32. Gamez-Alzate stated that he drove a different rental vehicle to Boston, then turned in that vehicle and picked up a second rental vehicle to travel to Dallas.

33. Gamez-Alzate stated that he was traveling to Dallas for a Marine friend's wedding and he would be there for a week.

34. Sgt. Faulkner asked Gamez-Alzate if he had any weapons in the vehicle.

35. Gamez-Alzate denied that he had any weapons in the car.

36. Sgt. Faulkner asked Gamez-Alzate if had any open containers of alcohol in the vehicle, or anything illegal in the car.

37. Gamez-Alzate responded no to both questions.

38. Sgt. Faulkner also asked whether there were any illegal drugs in the vehicles, to which Gamez-Alzate replied "No sir."

39. Sgt. Faulkner asked Gamez-Alzate if he had a large sum of currency over $10,000 in the vehicle, to which Gamez-Alzate replied "say again."

40. After Sgt. Faulkner repeated the question, Gamez-Alzate replied "no, sir."

41. When asked if he opposed Sgt. Faulkner searching his vehicle, Gamez-Alzate responded "yes."

6

42.   During the encounter between Sgt. Faulkner and Gamez-Alzate, Investigator J. Wood was completing a written warning for following too closely.

43.   As Investigator Wood completed the warning, Sgt. Faulkner deployed his K-9, Kilo, a narcotics detection canine, for a free air sniff around the vehicle.

44.   K-9 Kilo is certified and has been trained to alert on specific illegal drugs.

45.   Kilo displayed a sit indication after sniffing at the rear passenger door, which meant that he had alerted to the odor of narcotics.

46.   Investigator Wood ran Gamez-Alzate's license to determine its status.

47.    He then advised Sgt. Faulkner that Gamez-Alzate had a suspended driver's license.

48.   Sgt. Faulkner then advised Gamez-Alzate that the canine had positively alerted to the odor of narcotics coming from his vehicle.

49.   The officers determined that they had probable cause to search the vehicle.

50.   Sgt. Faulkner asked Gamez-Alzate if everything in the vehicle belonged to him, to which Gamez-Alzate responded "say again."

51.   When asked the question again, Gamez-Alzate replied "uh yes."

52.   When asked how much currency he had in the vehicle, Gamez-Alzate stated that he had $10,000 in the back seat.

53.   When asked if that was all he had, Gamez-Alzate stated that it was, and that he was sure there was no more currency in the vehicle.

54.   Gamez-Alzate was asked whether there would be any reason his license was suspended.

55.   Gamez-Alzate replied that he had a Driving Under the Influence ("DUI") charge 18 months earlier.

56.   He stated that he had submitted his paperwork regarding his license status a month earlier.

57.   A review of Gamez-Alzate's criminal history showed that he was arrested on or about December 21, 2018 for DUI and Hit and Run charges in San Diego, California.

58.   The officers searched the vehicle.

59.   During the search, Sgt. Faulkner located several personal items in a backpack in the back seat and center console of the vehicle.

60.   In the center console of the vehicle, Sgt. Faulkner found a cellphone wrapped in a bag and turned on airplane mode.

61.   Sgt. Faulkner also located a bundle of U.S. currency in a camouflage bag on the rear seat floorboard.

62.   The currency was wrapped in rubber bands and cellophane.

63.    When asked about the origin of the currency, Gamez-Alzate replied that the currency was from donations at his brother's funeral.

64.    Sgt. Faulkner continued to search the vehicle and located several bags in the trunk that contained military style clothing, civilian clothing, and weatherproof military style bags.

65.    In the last bag located in the back right corner of the trunk, Sgt. Faulkner also found a green military-type weatherproof bag.

66.    Inside that bag, he discovered 10 bundles of U.S. currency that were also wrapped in rubber bands and cellophane.

67.    Eight of the bundles were labeled "30," one bundle was labeled "50," and one bundle was labeled "60."

68.    The currency was wrapped in a fashion similar to currency found in narcotics trafficking and money laundering cases.

69.    The officers also found a vacuum-sealed bag that contained a spray bottle.

70.    The spray bottle contained a liquid with a strong odor and was wrapped in a paper towel.

71.    The packaging of the currency combined with the extremely strong-smelling spray located near the money was consistent with the attempted concealment of odors of controlled substances from law enforcement K-9s.

72.  Gamez-Alzate was placed under arrest for following too closely and driving on a suspended driver's license.

73.  The rental vehicle was impounded and Gamez-Alzate was transported to the Coweta County Jail.

74.  At the Coweta County Sheriff's Office ("CCSO") the officers conducted a five-bag test of the Defendant Currency with the K-9, Kilo.

75.  In conducting the five-bag test, Investigator Wood placed the seized currency in a bag, and placed that bag and four other bags in a line about three to four feet away from each other.

76.  Sgt. Faulkner then took Kilo and walked him beside the bags.

77.  Kilo displayed a positive alert on the bag containing the currency that was seized from the vehicle.

78.  At the CCSO, Gamez-Alzate refused to answer any questions.

79.  TFO Angel confirmed that Gamez-Alzate was an active duty Marine.

80.  The final count of the currency seized from the vehicle, the Defendant Currency, was $379,720.00.

81.  Of the Defendant Currency, $350,000.00 was stored in the trunk and the remainder was found in the passenger compartment of the vehicle.

82.  Law enforcement also seized Gamez-Alzate's cellphone, which was retrieved from his pants pocket, an additional cellphone located in the

center console of the vehicle, and an iPad from the front passenger

compartment of the vehicle ("Defendant Electronic Devices").

83. On or about October 21, 2020, Gamez-Alzate was released into the custody

of the military police and flown to California.

84. That same day, Gamez-Alzate was interviewed by agents with the United

States Naval Criminal Investigative Service ("NCIS").

85. Initially, Gamez-Alzate told the agents that he traveled to Boston to help

his family locate his mother.

86. However, when asked to clarify some inconsistencies, he stated that his

mother was missing and his deceased younger brother was involved with

some "bad people" prior to his death.

87. He stated that the "bad people" approached his mother and she was "on

the run."

88. He told the agents that he received a phone call and was given instructions

he had to follow if he did not want his family to be hurt.

89. Those instructions allegedly included renting a vehicle and driving to

several locations where he was given the cellphone law enforcement

seized from the center console of his vehicle and an envelope containing

cash.

90. He was also allegedly also told to drive to Atlanta, then to drive to Dallas.

11

91.     During the interview, Gamez-Alzate also admitted to putting United States Marine Corps stickers on the vehicle so that he would draw less attention to himself as he was driving the money.

92.     The Defendant Currency and Defendant Electronic Devices are subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6), because they are moneys and things of value that were furnished or intended to be furnished in exchange for a controlled substance, that constitute proceeds traceable to such an exchange, or that were used or were intended to be used to facilitate the sale or exchange of a controlled substance in violation of 21 U.S.C. § 841.

93.     The Defendant Currency and Defendant Electronic Devices are also subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) because they are properties that constitute or were derived from proceeds traceable to a violation of any offense constituting a "specified unlawful activity."

WHEREFORE, Plaintiff prays:

(1)     that the Court forfeit the Defendant Currency and the Defendant Electronic Devices to the United States of America;

(2)     that the Court award Plaintiff the costs of this action; and

(3)    that Plaintiff have such other and further relief as the Court deems

just and proper under the facts and circumstances of this case.

This _____ day of March, 2021.

Respectfully submitted,

Kurt R. Erskine
Acting United States Attorney

/s/ Cynthia B. Smith
Cynthia B. Smith
*Assistant United States Attorney*
Georgia Bar No. 655473
75 Ted Turner Dr., S.W.
Atlanta, Georgia 30303
404-581-6219
Cynthia.smith2@usdoj.gov

13

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

      PLAINTIFF,

           *v.*

$379,720.00 IN UNITED STATES
CURRENCY; ONE IPHONE CELL
PHONE, SERIAL NUMBER
FK1ZJ1VEN70Q; ONE IPHONE
CELL PHONE, SERIAL NUMBER
FFWD90MMPLJP; AND ONE
IPAD,

      DEFENDANTS.

CIVIL ACTION NO.:

## **VERIFICATION OF COMPLAINT FOR FORFEITURE**

I, Task Force Officer Eric Angel, have read the Complaint for Forfeiture in this action and state that its contents are true and correct to the best of my knowledge and belief based upon my personal knowledge of the case and upon information obtained from other law enforcement personnel.

14

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

This _5TH_ day of March 2021.

_____
TASK FORCE OFFICER ERIC ANGEL
HOMELAND SECURITY INVESTIGATIONS

15